Bruce D. Johnson (BJ0375)
Johnson & Associates
950 Third Avenue, Suite 2602
New York, New York 10022
(212) 808-9100
Attorney for Plaintiff Applied Technology and Counterclaim Defendants Fetter & Henderson
(Pty) Ltd. and John Fetter

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

APPLIED TECHNOLOGY LIMITED,

                          Plaintiff,                             07 CV 6620 (LTS)

      - against -

WATERMASTER OF AMERICA, INC.,

                          Defendant.

---

WATERMASTER OF AMERICA, INC.

                          Counter-Plaintiff,

      - against -

APPLIED TECHNOLOGY LIMITED, JOHN
FETTER, and FETTER & HENDERSON LTD

                          Counter-Defendants.

---

**BRIEF IN SUPPORT OF MOTION OF PLAINTIFF AND
COUNTERCLAIM DEFENDANTS TO
DISQUALIFY COUNSEL OF RECORD FOR DEFENDANT**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................................................ii

PROCEDURAL HISTORY..................................................................................................2

STATEMENT OF THE CASE.............................................................................................3

ARGUMENT.......................................................................................................................5

      I.     Applied Technology, Fetter & Henderson, and Mr. Fetter Are
            Present Clients of Defendant's Counsel and Have Not Consented to
            Defendant's Counsel's Representation of Defendant in This Case........................7

      II.    Even if Applied Technology, Fetter & Henderson, and Mr. Fetter are
            Treated Only as Former Clients, Defendant's Counsel Must be Disqualified.........9

            a.     The Former Client Test..............................................................................10

            b.     The Substantial Relationship Test..............................................................12

            c.     The Access to Relevant Privileged Information Test.................................13

CONCLUSION...................................................................................................................14

## TABLE OF AUTHORITIES

FEDERAL CASES                                                                PAGE

*Arifl v. De Transport Du Cocher, Inc.*, 290 F.Supp.2d 344 (E.D.N.Y. 2003)..........................7, 10

*Blue Planet Software, Inc. v. Games International, LLC*,
    331 F.Supp.2d 273 (S.D.N.Y. 2004)..............................................................7, 10, 11, 12

*Decora Incorporated v. DW Wallcovering, Inc.*, 899 F.Supp. 132 (S.D.N.Y. 1995)..............10, 11

*Fisons Corporation v. Atochem North America, Inc.*, 1990 WL 180551 (S.D.N.Y.)....................8

*Getty Petroleum Marketing, Inc. v. Island Transportation Corp.*,
    2002 WL 1684365 (S.D.N.Y.)..............................................................................7

*Guilford Mills, Inc. v. Tory, et al.*, 1987 WL 12406 (S.D.N.Y.)......................................6

*Hickman v. Burlington Bio-Medical Corporation*,
    371 F.Supp.2d 225 (E.D.N.Y. 2005)................................................................7, 9, 10, 12

*Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir.1975)...................................................7

*Human Electronics, Inc. v. Emerson Radio Corp.*,
    375 F.Supp.2d 102 (S.D.N.Y. 2004)................................................................10, 11, 13

*Jedwabny v. Philadelphia Transportation Co.*, 390 Pa. 231, 135 A.2d 252 (1957)......................7

*Lott v. Morgan Stanley Dean Witter & Co.*, 2004 WL 2980193 (S.D.N.Y.).................7, 10, 12, 13

*Papyrus Technology Corp. v. New York Stock Exchange, Inc.*,
    325 F.Supp.2d 270 (S.D.N.Y. 2004).................................................................7, 10, 11

*Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d 182 (S.D.N.Y. 2000)........................6, 8, 10

*Sapienza v. New York News, Inc.*, 481 F.Supp. 676 (S.D.N.Y. 1979)....................................7, 8, 9

*Sauer v. Xerox Corp.*, 85 F.Supp.2d 198 (W.D.N.Y. 2000)............................................7

*United States Football League v. National Football League*,
    605 F.Supp. 1448 (S.D.N.Y. 1985)........................................................................6

DISCIPLINARY RULES

Section 1200.24 [DR 5-105] of the New York Code of Professional Responsibility....................8

Bruce D. Johnson (BJ0375)
Johnson & Associates
950 Third Avenue, Suite 2602
New York, New York 10022
(212) 808-9100
Attorney for Plaintiff Applied Technology and Counterclaim Defendants Fetter & Henderson (Pty) Ltd. and John Fetter

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

———————————————————

APPLIED TECHNOLOGY LIMITED,

                      Plaintiff,

    - against -

WATERMASTER OF AMERICA, INC.,

                    Defendant.

———————————————————

WATERMASTER OF AMERICA, INC.

                  Counter-Plaintiff,

    - against -

APPLIED TECHNOLOGY LIMITED, JOHN
FETTER, and FETTER & HENDERSON LTD

                  Counter-Defendants.

———————————————————

07 CV 6620 (LTS)

### BRIEF IN SUPPORT OF MOTION OF PLAINTIFF AND COUNTERCLAIM DEFENDANTS TO DISQUALIFY COUNSEL OF RECORD FOR DEFENDANT

Plaintiff Applied Technology Limited ("Applied Technology") and Counterclaim

Defendants Fetter & Henderson (Pty) Ltd. ("Fetter & Henderson") and John Fetter ("Mr. Fetter"),

1

by their attorney, Bruce D. Johnson, Esq., submit this brief in support of their motion for an Order by this Court disqualifying Defendant's attorneys of record, William R. Hansen, Esq. ("Mr. Hansen") and Lathrop and Gage, L.C. ("Lathrop and Gage") (together, "Defendant's counsel") from representing Defendant, Watermaster of America, Inc., in this case.

PROCEDURAL HISTORY

Applied Technology commenced this action against Defendant in the Supreme Court of the State of New York, New York County by filing a summons and complaint on June 22, 2007 and by serving copies of that summons and complaint on the New York Secretary of State on July 8, 2007. A photocopy of that complaint ("Complaint") is annexed as Exhibit "A" to the declaration of Bruce D. Johnson, Esq., dated October 29, 2007, in support of the instant motion ("Johnson Declaration"). On June 23, 2007, Defendant removed this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1141 and 1146. On August 1, 2007, Defendant filed an answer to the Complaint. On August 20, 2007, Defendant filed an amended answer to the Complaint and counterclaims against Applied Technology, Fetter & Henderson, and Mr. Fetter ("Amended Answer"). A photocopy of the Amended Answer is annexed as Exhibit "B" to the Johnson Declaration. On August 30, 2007, Applied Technology filed its answer to the counterclaims against it in the Amended Complaint. On September 13, 2007, Fetter & Henderson and Mr. Fetter filed their answers to the counterclaims against them in the Amended Complaint. Photocopies of the answers to counterclaims of Applied Technology, Fetter & Henderson, and Mr. Fetter are annexed as Exhibit "C" to the Johnson Declaration.

STATEMENT OF THE CASE

As set forth in the declaration of Mr. Fetter, dated October 22, 2007, in support of the instant motion ("Fetter Declaration"), on or about September 7, 1999 Mr. Hansen met with and provided legal services to Mr. Fetter, in his individual capacity and in his capacity as a director, officer, and shareholder of Fetter & Henderson, regarding various aspects of their business activates and tax matters, in addition to certain immigration law questions regarding Mr. Fetter setting up residency in the United States. During those meetings, Mr. Hansen and attorneys who Mr. Hansen engaged to assist him received from Mr. Fetter privileged and confidential information of Fetter & Henderson, Mr. Fetter, and Applied Technology. During those meetings, Mr. Hansen and attorneys who Mr. Hansen engaged to assist him provided legal services to Fetter & Henderson and Mr. Fetter regarding their business activates and tax matters, including various aspects of what Mr. Hansen subsequently characterized as their "off shore business" and opined regarding the legality of their various business arrangements and dealings with Defendant. Specifically, Mr. Hansen received from Fetter & Henderson and Mr. Fetter privileged and confidential information and opined regarding matters substantially identical to the allegations contained in paragraphs numbered "41," "42," "43," "44," "48," "49," "50," "51," "54," "55," "56," and "58" of the Amended Answer. Thereafter, Mr. Hansen issued a statement for legal fees and disbursements, dated December 21, 1999, with respect to the foregoing meetings and consultations, in respect of which Mr. Fetter paid Mr. Hansen the sum of $6,567.60 by a check drawn on an account at the Royal Bank of Canada in London, England. Fetter Declaration ¶¶ 4-6.

Beginning in or about July of 2001, Mr. Hansen began representing Applied Technology by prosecuting a trademark application on its behalf. As a result of that representation by Mr.

Hansen, Applied Technology was issued United States registered trademark number 2847998 for the name "Multifil," which registration occurred on or about June 1, 2004. Declaration of Brian Hamlin, dated October 23, 2007, in support of the instant motion ("Hamlin Declaration"), ¶¶ 4-5 and Exhibit "A" thereto.

On or about September 1, 2004, Defendant's counsel sent a letter to Fetter & Henderson and Mr. Fetter in which they stated, "We would be pleased to continue to represent you after September 1, 2004, as we have done in the past." Defendant's counsel asked Fetter & Henderson and Mr. Fetter to sign a written consent form attached to that letter, also dated September 1, 2004, to Mr. Hansen's continued representation of them, to representation of them by Lathrop & Gage, and to Mr. Hansen moving their client files to his new law firm, Lathrop & Gage. Mr. Fetter signed that consent form on his own behalf and on behalf of Fetter & Henderson and returned it to Defendant's counsel, as they had instructed. Since then, neither Fetter & Henderson nor Mr. Fetter has taken any action to terminate their continued representation by Defendant's counsel. Neither Fetter & Henderson nor Mr. Fetter has received any communication from Defendant's counsel terminating that continuing representation. Fetter Declaration ¶¶ 7-8. Thus, as of this date, Defendant's counsel are still attorneys for Fetter & Henderson and Mr. Fetter, and Mr. Fetter's client files and those of Fetter & Henderson are still in the possession of Defendant's counsel. All of the privileged and confidential information of Fetter & Henderson and Mr. Fetter and all of the privileged and confidential information of Applied Technology that came into the possession of Mr. Hansen that should be in those client files are now in the possession of Defendants' counsel. Fetter Declaration ¶¶ 8-9.

On or about December 30, 2004, or six months after the Multifil trademark was registered, Defendant's counsel filed a "TEAS Change of Correspondence" that listed Mr.

4

Hansen as the attorney of record and Lathrop & Gage as the correspondent for Applied Technology with respect to the Multifil trademark. Defendant's counsel have not filed a request for permission to withdraw as the attorneys of record for Applied Technology with the United States Patent and Trademark Office. Applied Technology never terminated Defendant's counsel as its attorney of record and correspondent with respect to the Multifil trademark. Applied Technology is relying on Defendant's counsel, as its counsel of record before the United States Patent and Trademark Office, to advise it concerning any notices, correspondence or other communications Defendant's counsel receives concerning the Multifil trademark. Hamlin Declaration ¶¶ 5-6.

Applied Technology, Fetter & Henderson, and Mr. Fetter never consented to Defendant's counsel representing Defendant in this case. Nor have Defendant's counsel ever sought such consent from Applied Technology, Fetter & Henderson or Mr. Fetter. Hamlin Declaration ¶ 4; Fetter Declaration ¶ 3.

Defendant's counsel already have used the privileged and confidential information of Applied Technology, Fetter & Henderson, and Mr. Fetter to formulate their counterclaims in this case. Applied Technology, Fetter & Henderson, and Mr. Fetter are extremely concerned that Defendant's counsel will use that same privileged and confidential information in an attempt to taint the trial of this case. Fetter Declaration ¶ 10; Hamlin Declaration ¶ 10.

<u>ARGUMENT</u>

The instant motion ought to be granted for the reasons: (a) that Applied Technology, Fetter & Henderson, and Mr. Fetter are present clients of Defendant's counsel, who Defendant's counsel have sued without the consent of Applied Technology, Fetter & Henderson or Mr. Fetter, and (b) that, even if Applied Technology, Fetter & Henderson, and Mr. Fetter are treated as being

only former clients of Defendant's counsel, Defendant's counsel came into possession of privileged and confidential information of Applied Technology, Fetter & Henderson, and Mr. Fetter during Mr. Hansen's representation of Fetter & Henderson and Mr. Fetter, on September 7, 1999, that bears substantial and identical relationships to the subject matters of this case and to the allegations in paragraphs numbered "41," "42," "43," "44," "48," "49," "50," "51," "54," "55," "56," and "58" of the Amended Answer. Moreover, Defendant's counsel almost certainly will use the privileged and confidential information of Applied Technology, Fetter & Henderson, and Mr. Fetter in prosecuting Defendant's counterclaims in this case and will use that privileged and confidential information to taint the trial of this case.

"The moving party bears the laboring oar on motions to disqualify the opposing party's attorney." *Guilford Mills, Inc. v. Tory, et al.*, 1987 WL 12406 * 3 (S.D.N.Y.).

> In *Board of Educ. of the City of New York v. Nyquist*, the Second Circuit noted that, with rare exceptions, disqualification is appropriate only in two kinds of cases: (1) where an attorney's conflict of interests undermines the Court's confidence in the vigor of the attorney's representation of his client, or, more commonly, (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation. 590 F.2d 1241, 1246 (2d Cir.1979) (citing *Fund of Funds*, 567 F.2d 225, *Cinema 5, Ltd v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir.1976), and *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973)). In either of these circumstances, an attorney's conduct would "taint the underlying trial" and disqualification is "necessary to preserve the integrity of the adversary process." *Nyquist*, 590 F.2d at 1246.

*Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d 182, 187 (S.D.N.Y. 2000). As Judge Leisure wrote in *United States Football League v. National Football League*, 605 F.Supp. 1448, 1452 (S.D.N.Y. 1985):

> Only two readily identifiable situations raised the specter that the litigation will be tainted if one side's counsel is permitted to remain in the case: when the challenged attorney is concurrently representing adverse interests so that his vigor in pursuing the interests of one of them is questionable, *see, e.g., Fund of Funds*,

*Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977); or when the attorney's successive representation of adverse interests raised the possibility that in the present mater he will improperly use confidences gained in the prior representation to the detriment of his former client, *see, e.g., Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir. 1980), vacated on other grounds and remanded, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981).

*See also Papyrus Technology Corp. v. New York Stock Exchange, Inc.*, 325 F.Supp.2d 270 (S.D.N.Y. 2004).

"The importance of preserving client confidences requires that all doubts be resolved in favor of disqualification." *Hickman v. Burlington Bio-Medical Corporation*, 371 F.Supp.2d 225, 229 (E.D.N.Y. 2005). *See also Hull v. Celanese Corp.*, 513 F.2d 568 (2d Cir.1975); *Blue Planet Software, Inc. v. Games International, LLC*, 331 F.Supp.2d 273 (S.D.N.Y. 2004); *Lott v. Morgan Stanley Dean Witter & Co.*, 2004 WL 2980193 (S.D.N.Y.); *Arifl v. De Transport Du Cocher, Inc.*, 290 F.Supp.2d 344 (E.D.N.Y. 2003); *Getty Petroleum Marketing, Inc. v. Island Transportation Corp.*, 2002 WL 1684365 (S.D.N.Y.); *Sauer v. Xerox Corp.*, 85 F.Supp.2d 198 (W.D.N.Y. 2000).

I.    Applied Technology, Fetter & Henderson, and Mr. Fetter Are
Present Clients of Defendant's Counsel and Have Not Consented to
<u>Defendant's Counsel's Representation of Defendant in This Case</u>

As concisely stated by the Pennsylvania Supreme Court:

No one could conscionably contend that the same attorney may represent both the plaintiff and defendant in an adversary action. Obviously, the attorney cannot serve the opposed interests of his two clients fully and faithfully. The ancient rule against one's attempting to serve two masters interposes.

*Jedwabny v. Philadelphia Transportation Co.*, 390 Pa. 231, 135 A.2d 252, 254 (1957) (quoted in *Sapienza v. New York News, Inc.*, 481 F.Supp. 676, 679 (S.D.N.Y. 1979).

In *Cinema 5 Ltd. v. Cinerama, Inc.*, the Second Circuit stated "[p]utting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and

consent of all concerned." *Cinema 5,* 528 F.2d 1384, 1386 (2d Cir. 1976) ... Where the relationship is a continuing one, adverse representation is prima facie improper ... and the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.

*Rocchigiani v. World Boxing Counsel, supra,* 82 F.Supp.2d at 189.

The United States Court of Appeals for the Second Circuit has held that where the lawyer … has a continuing relationship with one client and then accepts employment from another client with differing interests, the "adverse representation is prima facie improper." Cinema 5, Ltd. v. Cinerama, Inc., supra, 528 F.2d at 1387.

*Id. See also Fisons Corporation v. Atochem North America, Inc.,* 1990 WL 180551 (S.D.N.Y.)

("In this circuit, such adverse representation of a current client is *prima facie* improper.")

Section 1200.24 [DR 5-105] of the New York Code of Professional Responsibility provides that:

(b) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under subdivision (c) of this section.

(c) In the situations covered by subdivisions (a) and (b) of this section, a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved.

(d) While lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so under section 1200.20(a), 1200.24(a) or (b), 1200.27(a) or (b), or 1200.45(b) of this Part except as otherwise provided therein.

"The Code has been recognized as a principal source of guidance for the courts on professional responsibility. E. g., Armstrong v. McAlpin, 606 F.2d 28, 30 (2d Cir. 1979); Cinema 5, Ltd. v.

8

Cinerama, Inc., 528 F.2d 1384, 1386 (2d Cir. 1976)." *Sapienza v. New York News, Inc.*, *supra*, 481 F.Supp at 679.

In the instant case, Defendant's counsel are the present attorneys of record for Applied Technology before the United States Patent and Trademark Office, in which capacity they are responsible for communicating with Applied Technology with regard to notices to renew and other correspondence concerning the trademark owned by Applied Technology. Defendant's counsel also are the present attorneys for Fetter & Henderson and Mr. Fetter pursuant to the written consent "to continue to represent you after September 1, 2004," dated September 1, 2004, that Defendant's counsel prepared and sent to Fetter & Henderson and Mr. Fetter.

Incontrovertibly, Applied Technology, Fetter & Henderson, and Mr. Fetter are all *present* clients of Defendant's counsel. As incontrovertibly, Defendant's counsel's representation of Defendant is this case is *prima facie* improper under the law in the Second Circuit. Furthermore, because Defendant's counsel never sought the consent of Applied Technology, Fetter & Henderson or Mr. Fetter to their representation of Defendant in this case, "after full disclosure of the implications of the simultaneous representation and the advantages and risks involved," it was improper for Defendant's counsel to have accepted employment by Defendant as its counsel of record in this case. The impermissible conflict in loyalties and diminution in the zealousness of Defendant's counsel's representation of Applied Technology, Fetter & Henderson, and Mr. Fetter is manifest and necessarily will taint the trial in this case.

II.    Even if Applied Technology, Fetter & Henderson, and Mr. Fetter are
<u>Treated as Former Clients, Defendant's Counsel Still Must be Disqualified</u>

An attorney will be disqualified from representing a client where: (I) the party seeking disqualification is a former client of the attorney sought to be disqualified; (2) there exists a substantial relationship between the subject matter of the pending case and counsel's prior representation of the client, and (3) the attorney

> sought to be disqualified had access, or was likely to have access, to relevant privileged information in the course of his prior representation of the moving client. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *see Guerrilla Girls, Inc. v. Kay,* 2004 WL 2238510 * I (S.D.N.Y.2004); *AriJi v. de Transport du Cocher, hoc.,* 290 F.Supp.2d 344, 349 (E.D.N.Y.2003).

*Hickman v. Burlington Bio-Medical Corporation, supra,* 371 F.Supp.2d at 229 (footnote omitted). *See also Lott v. Morgan Stanley Dean Witter & Co., supra,* 2004 WL 2980193 (S.D.N.Y.); *Human Electronics, Inc. v. Emerson Radio Corp.*, 375 F.Supp.2d 102 (S.D.N.Y. 2004); *Blue Planet Software, Inc. v. Games International, LLC, supra,* 331 F.Supp.2d 273; *Papyrus Technology Corp. v. New York Stock Exchange, Inc., supra,* 325 F.Supp.2d 270; *Arifl v. De Transport Du Cocher, Inc., supra,* 290 F.Supp.2d 344; *Rocchigiani v. World Boxing Counsel, supra,* 82 F.Supp.2d 182; *Decora Incorporated v. DW Wallcovering, Inc.,* 899 F.Supp. 132 (S.D.N.Y. 1995).

### a.    The Former Client Test

> [A]n attorney need not have an ***express*** attorney-client relationship with the former client, instead, the appropriate inquiry is whether the lawyer has obtained or had access to secrets or confidences of the former client. *Papyrus,* 325 F.Supp.2d at 277. Additionally, there is an ***irrehuttahle*** presumption that an attorney who has represented a client will have obtained secrets and confidences of that client. *Id.* at 277. The court is not required to determine whether the attorney actually received any confidential information, the important factor is whether the attorney had "access" to the information. *Id.*

*Human Electronics, Inc. v. Emerson Radio Corp., supra,* 375 F.Supp.2d at 106.

> In certain circumstances, disqualification may be appropriate when an attorney gains access to the confidences even of someone who is not formally a client. One court explained that an attorney may be disqualified from representing interests adverse to a non-client "where the close and indeed symbiotic relationship between ... [the non-client] and the actual client, quite naturally encouraged confidential discussions with [the attorney] and the exchange of confidential information which the [non-client] would not otherwise have imparted." *See Flushing Nat'l Bank v. Municipal Assistance Corp. for the City of New York,* 90 Misc.2d 204, 210, 397 N.Y.S.2d 662, 667 (N.Y.1977).

\*       \*       \*

10

> It is clear that where an attorney receives confidential information from a person who, under the circumstances, has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidence irrespective of the absence of a formal attorney client relationship.

*Blue Planet Software, Inc. v. Games International, LLC, supra*, 331 F.Supp.2d at 276. "[A] lawyer has 'represented a client' if the lawyer has obtained or had access to confidences or secrets of the former client." *Papyrus Technology Corp. v. New York Stock Exchange, Inc., supra*, 325 F.Supp.2d at 277.

On September 7, 1999, Mr. Hansen met with and counseled Fetter & Henderson and Mr. Fetter, at which time he received privileged and confidential information from them concerning their business activates and tax matters, including the "off shore" business with Defendant at issue in this case.[1] In the course of so counseling Fetter & Henderson and Mr. Fetter, Mr. Hansen also received privileged and confidential information of Applied Technology with respect to the "off shore" business with Defendant at issue in this case. Thereafter, Mr. Fetter paid Mr. Hansen $6,567.60 for the legal services that Mr. Hansen provided to Fetter & Henderson and Mr. Fetter. From July of 2001 through at least June 1, 2004, Mr. Hansen represented Applied Technology before the United States Patent and Trademark Office in the prosecution of the Multifil trademark. Thus, Applied Technology, Fetter & Henderson, and Mr. Fetter are all "former clients" for purposes of this analysis, and the first part of the three part test formulated by the Second Circuit Court of Appeals is met.

---

[1] In *Decora Incorporated v. DW Wallcovering, Inc., supra*, 899 F.Supp. at 134, the number of hours and type of legal services that led to disqualification were far less extensive than in this case: "Mr. Hedman revealed portions of Decora's confidential trade secrets to him. Mr. Hedman discussed these trade secrets in his *in camera* testimony given in connection with this motion. After conducting the search, Mr. Robinson discussed the results with Mr. Hedman and attorney Thomas M. Gibson. All of these events occurred on May 13, 1991. Mr. Robinson spent one and a quarter hours working on the matter, the bulk of which was spent working directly with Mr. Hedman."

b.     The Substantial Relationship Test

The Second Circuit has embraced the "substantial relationship" standard elucidated by Judge Weinfeld in *TC. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953): I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent.

*Lott v. Morgan Stanley Dean Witter & Co.*, *supra*, 2004 WL 2980193 * FN1 (S.D.N.Y.).

If there is present a common factual question, the substantial relationship test is satisfied … "it is the congruence of factual matters ... that establishes a substantial relationship".

*Hickman v. Burlington Bio-Medical Corporation*, *supra*, 371 F.Supp.2d at 230.

Determining substantial relationship "requires a determination with respect to whether the facts which were necessary to the first representation are necessary to the present litigation." *See Regal Marketing* 2002 WL 1788026, at *7 (citing *UnitedStates Football League v. National Football League*, 605 F.Supp. 1448, 1459 (S.D.N.Y.1985)). (A substantial relationship exists if facts pertinent to the problems for which the original legal services were sought are relevant to the subsequent litigation.).

*Blue Planet Software, Inc. v. Games International, LLC*, *supra*, 331 F.Supp.2d at 277.

The facts common to this case and to Mr. Hansen's prior representations of Applied Technology, Fetter & Henderson, and Mr. Fetter are the business dealings, tax matters, and "off shore" business with Defendant, as summarized in the billing statement issued by Mr. Hansen on December 21, 1999.  Those common facts appear in paragraphs numbered "41," "42," "43," "44," "48," "49," "50," "51," "54," "55," "56," and "58" of the Amended Answer as counterclaims against Applied Technology, Fetter & Henderson, and Mr. Fetter.  All of the parties agree that the "off-shore" business at issue in this case, as to which Mr. Hansen counseled Mr. Fetter, involves the business dealings among Mr. Fetter, Fetter & Henderson, and Applied

Technology, on the one hand, and Defendant, on the other hand. Amended Complaint ¶¶ "41," "43," "48," "49," "50," "51," and "52." Thus, the "facts pertinent to the problems for which the original legal services were sought are relevant to the [present] litigation," and the second part of the three part test formulated by the Second Circuit Court of Appeals is satisfied.

c.    The Access to Relevant Privileged Information Test

> [T]he movant must also demonstrate that the attorney "at issue had access to, or was likely to have access to, privileged information in the course of his prior representation." *Blue Planet Software, Inc. v.. Games Intern.,* LLC, 331 F.Supp.2d 273, 277 (S.D.N.Y.2004) … the movant is not required to demonstrate that "an attorney actually had access to or received privileged information while representing the client in a prior case," *Gov't of India,* 569 F.2d at 740.

*Lott v. Morgan Stanley Dean Witter & Co., supra,* 2004 WL 2980193 * 4 (S.D.N.Y.).

All of the attorneys in a law firm are presumed to have access to the former client's privileged and confidential information.

> The imputation rule is based upon the belief that when attorney-client confidences are disclosed to a member of the law firm, every other attorney in the law firm has the opportunity to ascertain the information gleaned from the disclosure.

*Id. See also Human Electronics, Inc. v. Emerson Radio Corp., supra,* 375 F.Supp.2d at 106.

Unquestionably, Defendant's counsel had and have access to the privileged and confidential information of Applied Technology, Fetter & Henderson, and Mr. Fetter because Mr. Hansen gathered that information on September 7, 1999 and because the client files of Fetter & Henderson and Mr. Fetter were transferred to Lathrop & Gage on or about September 1, 2004. Those client files and all of the privileged and confidential information of Applied Technology, Fetter & Henderson, and Mr. Fetter contained therein, presently are in the possession of Mr. Hansen and Lathrop & Gage, giving Defendant's counsel access to the privileged and confidential information at issue. The privileged and confidential information in those client files must be imputed to each and every attorney in Lathrop & Gage, as evidenced by the fact that

13

Bernadette McGlynn Reilly, Esq. of Lathrop & Gage also is an attorney of record for Defendant in this case. Thus, the third part of the three part test formulated by the Second Circuit Court of Appeals is fulfilled.

CONCLUSION

It is respectfully submitted that, based upon all of the foregoing, the instant motion ought to be granted in its entirety and this Court ought to issue an Order disqualifying William R. Hansen, Esq. and Lathrop and Gage, L.C. as counsel of record for Defendant, Watermaster of America, Inc., in this case.

Dated: New York, New York
       October 29, 2007

_____
Bruce D. Johnson (BJ0375)

## CERTIFICATE OF SERVICE

I hereby certify that, on the 29th day of October, 2007, I electronically filed the foregoing Brief in Support of Motion of Plaintiff and Counterclaim Defendants to Disqualify Counsel of Record for Defendant with the Clerk of the United States District Court, Southern District of New York, using the CM/ECF system and that a true copy of the foregoing Counterclaim Defendant John Fetter's Reply to Counterclaims was mailed this 29th day of October, 2007, by first class United States mail, to the following counsel of record:

> William R. Hansen, Esq.
> Lathrop & Gage, L.C.
> 230 Park Avenue, Suite 1847
> New York, New York 10169

> Bruce D. Johnson (BJ0375)
> Attorney for Plaintiff Applied Technology Limited and Counterclaim Defendants Fetter & Henderson (Pty) Ltd. and John Fetter
> Johnson & Associates
> 950 Third Avenue, Suite 2602
> New York, New York 10022
> (212) 808-9100
> (212) 808-5536 facsimile