William R. Hansen, Esq. (WH-9446)
Bernadette McGlynn Reilly (BR-4117)
Thomas J. FitzGerald, Esq. (TF-2426)
LATHROP & GAGE L.C.
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220

*Attorneys for Defendant
Watermaster of America, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                   :

APPLIED TECHNOLOGY LIMITED,     :    07 CV 6620 (LTS)
                                   :
               Plaintiff,             :    **DECLARATION OF**
                                   :    **WILLIAM R. HANSEN**
   -against-                          :    **IN OPPOSITION TO MOTION TO**
                                   :    **DISQUALIFY WILLIAM R. HANSEN**
WATERMASTER OF AMERICA, INC.,  :    **AND LATHROP & GAGE L.C. AS**
                                   :    **ATTORNEYS FOR WATERMASTER**
             Defendant.          :    **OF AMERICA, INC.**
                                   :
-------------------------------------------------------x
                                   :

WATERMASTER OF AMERICA, INC.,  :

            Counter-Plaintiff,   :

   -against-                          :

APPLIED TECHNOLOGY LIMITED,     :
JOHN FETTER and FETTER &
HENDERSON, LTD.,                    :

            Counter-Defendants. :
                                   :
-------------------------------------------------------x

WILLIAM R. HANSEN hereby declares:

1.  I am a member of the firm of Lathrop & Gage L.C., attorneys for the Defendant and Counter-Plaintiff Watermaster of America, Inc. ("Watermaster") and have been admitted to practice before this Honorable Court since 1979. I am lead counsel for Watermaster and am fully familiar with the facts and circumstances surrounding within action.

2.  By their motion, Plaintiff, Applied Technology Limited ("ATI"), and Counter-Defendants Fetter & Henderson, Ltd. ("F&H") and Mr. John Fetter, seek to disqualify me on the grounds that I and Lathrop & Gage L.C. presently represent each of them as their attorneys. This shocking allegation against my ethics is as unfortunate as it is untrue. As set forth here and in the accompanying affidavit of Rosalie Schink, the President of Watermaster of America, Inc., I have no present representation of any of the other parties; and that my prior representation of Mr. Fetter, F&H and ATI were all at the instruction of my client, Watermaster, in order to assist in a joint business undertaking between Watermaster and Mr. Fetter's companies.

**Background**

3.  Beginning in 1986, I represented Robert Morris, now deceased, in organizing the Watermaster business. Bob Morris was the founder of Watermaster and my client until his death in early 2006. Bob Morris had been my client since the early 1980's. Rosalie Schink is Bob's widow and the owner of Watermaster.

4.  The business of Watermaster is the distribution and sale of industrial battery paraphernalia, including battery caps purchased since 1986 from Mr. Fetter's

various companies. To the best of my knowledge, all of Fetter's and Morris' dealings were at arms length, as separate companies. I represented Bob Morris and advised him and Watermaster on his dealings with Mr. Fetter's various businesses from 1986 to the time of his death. I continue to advise Ms. Schink and Watermaster on these matters.

**1999 Events**

5. In 1999, with my former firm Nims, Howes, Collison, Hansen & Lackert ("the Nims Firm"), I was requested by Robert Morris (Watermaster) to assist Fetter & Henderson in a patent infringement matter. (Starting in 1978 I have principally practiced within the field of intellectual property law, for Watermaster and for many other clients.) Bob Morris asked me to act for both Watermaster and Mr Fetter's company against the possible patent infringement by Trojan Battery since they both had mutual interests in prosecuting this infringement. Mr. Fetter owned the patent at issue. Watermaster owns the trademark and sold the product in the United States. Attached hereto as Exhibit "A" is a copy of my April 19, 1999 letter to Mr. Fetter, a copy of which was sent to Bob Morris, accepting the joint representation on behalf of the Nims Firm.

6. The Trojan Battery Infringement matter was resolved without litigation in 1999-2000. My then partner, William Sapone, Esq., handled the matter for Watermaster and F&H. Mr. Sapone left the Nims firm in the year 2000. I understand that Mr. Sapone represents both Applied Technologies and Mr. Fetter in patent and trademark matters in his present firm, Coleman, Sudol & Sapone, P.C.

7. No facts relating to the Trojan Battery Infringement have anything to do with the present case between the parties. Files relating to this matter remained with the Nims Firm.

8. The next matter involves Bob Morris' request in 1999 that I assist Mr. Fetter and his wife, Dr. Pamela Fetter, find counsel to assist them in a discussed emigration from the Republic of South Africa to the United States. Bob Morris wished me to represent him and his business interests in any plans that Mr. Fetter may have had for emigration to the U.S., since Mr. Fetter's manufacturing business was also proposed to be established in the U.S.

9. Through my friend and colleague, Robert J. Cordy, then the Managing Partner of the Boston office of McDermott, Will & Emery, I arranged a series of meetings for Mr. Fetter and his wife with McDermott, Will & Emery attorneys at their Rockefeller Center offices in September, 1999. Despite Mr. Fetter's statement, he did not reveal to me any confidential plans other than those concerning his proposed emigration and business plans which he had already shared with my client, Bob Morris.

10. To the best of my knowledge, the firm of McDermott, Will & Emery was never retained by Mr. Fetter and he did not emigrate to the United States.

11. In his declaration, Mr. Fetter states that I "counseled [Mr. Fetter] and Fetter & Henderson…regarding various aspects of what Mr. Hansen subsequently characterized as our 'off shore business' and opined regarding the legality of our various arrangements and dealings with Defendant." First, I represented Bob Morris and Watermaster at these meetings. Second, the vague reference to "subsequently characterized" refers, I believe, to the statement for services rendered December 21, 1999 sent by the Nims Firm <u>to Robert Morris at Watermaster</u>. (Attached hereto as Exhibit "B".) Mr. Fetter must have received this statement from Bob Morris and retained it. This statement was given to his counsel in this case, Bruce Johnson, who included it in

4

his first correspondence with me in this matter (see the section of my Affidavit describing the exchange of correspondence between counsel). In December 1999 Bob Morris asked me to provide Mr. Fetter the banking information for the Nims Firm since Bob Morris informed me that Mr. Fetter was going to pay the Nims Firm for a portion of the fees charged to Watermaster of the December 1999 statement. I did this, again at Bob Morris' request. I viewed this as part of the business dealings between Watermaster and Mr. Fetter's various companies.

### MULTIFIL Trademark

12. Beginning around 2001, Bob Morris, together with Mr. Fetter, began the joint development of a battery additive composition which was designed to prolong the life of industrial batteries. The commercial exploitation of the chemical composition was to be undertaken by Bob Morris' Watermaster company with Mr. Fetter's companies supplying the manufacturing know-how for the joint venture. The invention is detailed in U.S. Patent 7,147,972, in which Mr. Fetter and Bob Morris are named as inventors.

13. As part of marketing phase, Bob Morris sent me a letter requesting that I register the trademark MULTIFIL in the United States Patent and Trademark Office ("USPTO") in the name of Applied Technology, Inc. A copy of the letter is attached as Exhibit "C." Bob Morris asked that I undertake this representation since Watermaster would be the exclusive U.S. distributor and licensee of the mark MULTIFIL for use with new battery products.

14. On April 2, 2001, an application to register MULTIFIL was filed in the USPTO, naming me, along with other members of the Nims Firm as attorney of record. The case was successfully prosecuted and a registration issued on June 1, 2004.

### File Transfer Letters

15. During this period (2001-2004), the Nims Firm ceased the practice of law on March 31, 2002. On April 1, 2002, I moved my practice to the New York office of Duane Morris, LLP. On September 1, 2004, I moved to my present firm Lathrop & Gage L.C. As part of that move, Lathrop & Gage sent letters to all present and former clients of mine which files I held. Mr. Fetter and his companies were former clients in the Trojan Battery matter and in the MULTIFIL matter. Upon receipt of the letters signed by Mr. Fetter, Duane Morris released these two files to Lathrop & Gage. A copy of the letter is attached as Exhibit "D."

16. The transfer letter was *not* a retainer or an acceptance of any new work from Mr. Fetter and his companies. Indeed, Mr. Fetter cites to *no* instance where he sought advice since the 2004 transfer. As set forth in Ms. Schink's affidavit, until this litigation, Mr. Fetter consistently viewed me as Bob Morris' lawyer. I have no present recollection of speaking with Mr. Fetter since the 1999 meetings in New York.

17. As for the file history of the MULTIFIL registration, pursuant to the Trademark Rules regulating the practice of attorneys, the power of attorney which appointed me "attorney of record" expired at the issuance of the registration. A copy of the relevant portion of this rule is attached as Exhibit "E."

18. With no active power of attorney, I cannot take any action relating to the registration of MULTIFIL without a new power of attorney. Thus, any representation of Applied Technologies, Inc. by me, a member of Duane Morris, L.P., before the USPTO ended on June 1, 2004, when the registration issued.

## Correspondence With Counsel

19. In a series of letters starting on September 11, 2007 and ending on October 5, 2007, Mr. Johnson informed me that I was compelled to be disqualified from representing my long-time client, Watermaster; that continued representation was unethical to the extent that a complaint to the First Department Grievance Committee would be lodged by him; and that Lathrop & Gage was advised to inform our professional liability counsel. Copies of these correspondences are attached as Exhibit "F."

20. I viewed this as a litigation ploy which attempted to bully me out of representing Rosalie Schink and Watermaster as part of Mr. Fetter's belligerent attempt to grab the U.S. Watermaster business away from my client. I did respond to Mr. Johnson's attack on me in a letter dated September 17, 2007, which is attached as Exhibit "G."

21. On October 5, 2007, Mr. Johnson responded to me with a somewhat belligerent letter involving a conference on the issues with Judge Swain. Choosing not to violate the Court's rules on motion practice, we declined. (Exhibit "H") Mr. Johnson and I conferenced by phone on October 8, 2007. More than three weeks later, the present motion was filed.

22. Federal Court litigation is not a "parlor game." However, attacks on opposing counsel along the lines of the motion should be given no credence by the Court.

23. The meritless motion to disqualify me from representing my client of more than twenty years would be highly prejudicial to my client and create an unwarranted strategic victory for the Plaintiff and Counter-Defendants.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

s/William R. Hansen
William R. Hansen

NYDOCS 54352v1