Bruce D. Johnson (BJ0375)
Johnson & Associates
950 Third Avenue, Suite 2602
New York, New York 10022
(212) 808-9100
Attorney for Plaintiff Applied Technology and Counterclaim Defendants Fetter & Henderson
(Pty) Ltd. and John Fetter

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

APPLIED TECHNOLOGY LIMITED,

                Plaintiff,

   - against -

WATERMASTER OF AMERICA, INC.,

                Defendant.

07 CV 6620 (LTS)

---

WATERMASTER OF AMERICA, INC.

                Counter-Plaintiff,

   - against -

APPLIED TECHNOLOGY LIMITED, JOHN
FETTER, and FETTER & HENDERSON LTD

                Counter-Defendants.

---

### REPLY DECLARATION OF JOHN FETTER IN CONNECTION WITH MOTION TO DISQUALIFY COUNSEL OF RECORD FOR DEFENDANT

JOHN FETTER hereby declares under penalty of perjury:

1.     I am the individual Counterclaim Defendant in this case.  I also am a director, officer, and shareholder of Counterclaim Defendant Fetter & Henderson (Pty) Ltd. in this case.

1

As such, I am familiar with the facts and circumstances surrounding this case and with the books and records of Fetter & Henderson (Pty) Ltd.

2.    I make this reply declaration in connection with the motion by Plaintiff, Applied Technology Limited, Fetter & Henderson (Pty) Ltd., and myself for an Order by this Court disqualifying Defendant's attorneys of record, William R. Hansen, Esq. ("Mr. Hansen") and Lathrop & Gage, L.C. ("Lathrop & Gage") (together, "Defendant's counsel"). As to Fetter & Henderson (Pty) Ltd. and myself, the grounds for this motion are (a) that Defendant's counsel presently are the attorneys for Fetter & Henderson (Pty) Ltd. and myself pursuant to a consent to continued representation and to transfer of client files, dated September 1, 2004, that Defendant's counsel transmitted to us and asked us to sign and (b) that, during his representation of Fetter & Henderson (Pty) Ltd. and me in September of 1999, Mr. Hansen came into possession of certain privileged and confidential information of Fetter & Henderson (Pty) Ltd. and mine that bears a substantial and identical relationship to the subject matters of this case.

3.    Defendant's papers in opposition to the instant motion are replete with intentional misstatements of facts, disclosures of information that I consider to be privileged and confidential, and innuendos that do not stand the light of day.

4.    The sole and compelling reason why I have not revealed the substance of my attorney-client communications with Mr. Hansen and the attorneys who he engaged to assist him on September 7, 1999 is that all of those communications are privileged and confidential. Declaration of Mr. Hansen, bearing no date ("Hansen Deceleration"), ¶ 9; 20; Defendant's brief in opposition to the instant motion ("Defendant's Brief") pp. 3, 6, 12, 13, 14, 15.

5.      I am willing and prepared to reveal the substance of those communications to this Court *in camera*.[1]  I have a highly detailed recollection of the names of everyone to whom I imparted privileged and confidential information on September 7, 1999, the times of day when we met and spoke, their locations when I imparted that information to them, the specific information that I imparted, the questions that they asked, the comments that they made, and the legal advice and counsel that I received from each of them, including from Mr. Hansen.

6.      Incredibly, Mr. Hansen admits (but only in Defendant's Brief) that. "it is untenable that Mr. Hansen ever would have been entrusted with confidences by the [sic] Plaintiff which were not also known to the Defendant." Defendant's Brief p. 15.  I shared numerous confidences and secrets with Mr. Hansen and his colleagues on September 7, 1999, and particularly with regard to the legal relationships between Applied Technology Limited and Fetter & Henderson (Pty) Ltd. that dictated how those companies did business with Defendant, that I never – either before that date or after that date – communicated in any manner to Defendant or to Robert Morris ("Mr. Morris").  As set forth below and in my declaration in support of the instant motion, dated October 22, 2007, that information has made its way, through Mr. Hansen, into the Counterclaims in this case.

7.      On June 1, 2007, I received a letter from Ms. Schink announcing that she is shutting down Defendant's business operations by the end of this year.[2]  Annexed hereto as Exhibit "A" is a photocopy of that letter.  Thus, Defendant no longer is in the business of selling products that it purchased from Plaintiff Applied Technology Limited.  Hansen Declaration ¶ 4;

---

[1] I ask that I be permitted to do so by telephone, however, given my location in South Africa and my status as a counterclaim defendant in this case.
[2] "We have recently passed the two year anniversary of Bob's death."

Affidavit of Rosalie Schink ("Ms. Schink"), sworn to November 13, 2007 ("Schink Affidavit"), ¶¶ 5. 16; Exhibit "B."

8.      The sole genesis of this case was Defendant's refusal to pay for products that it received from Applied Technology Limited and the prospect of it being dissolved before paying what it owes to Applied Technology Limited. Schink Aff. ¶ 9. What Defendant characterizes as a "royalty" or a "commission" was, in fact, a financial assistance agreement between Applied Technology Limited and Mr. Morris, individually, to offset certain out-of-pocket marketing startup costs that Mr. Morris claimed he had incurred. Defendant was not a party to that agreement, and all payments were made by Applied Technology Limited to Karlmar Ltd., an Isle of Man registered company. As Defendant admits in the Counterclaims, those payments ended over fifteen (15) years ago, on July 1, 1992. Amended Answer ¶¶ 55, 56.

9.      Rather than Defendant spending money arguing over whether Mr. Hansen and Lathrop & Gage presently represent or previously represented Applied Technology Limited, Fetter & Henderson (Pty) Ltd. or me, I would prefer to have Ms. Schink pay Applied Technology Limited the $633,130.00 that it is owed by Defendant. Schink Aff. ¶ 15.

10.     I have never disputed that Mr. Hansen also represented Mr. Morris, who passed away in 2005 – not in 2006. Hansen Deceleration ¶¶ 3, 4; Schink Affidavit ¶ 3; Defendant's Brief p. 2. Annexed hereto as Exhibit "B" is a photocopy of the Decree Granting Probate of the last will and testament of Mr. Morris, bearing File Number 2005-2501 and a date of July 22, 2005. Mr. Hansen's and Ms. Schink's recollections of when Mr. Morris died are no less faulty than their recollections of the other events at issue in the instant motion and in this case.

11.     Ms. Schink had no involvement in or first hand knowledge of my dealings with Mr. Hansen. Schink Affidavit ¶¶ 5, 6, 7. 8.

4

12.    The dispute with Trojan Battery was between Applied Technology Limited, who own the patent at issue, and Trojan Battery, not Fetter & Henderson (Pty) Ltd. or me individually. Hansen Declaration ¶ 5.  Obviously, Mr. Hansen knows how to seek the informed consent of a client to a joint representation (albeit imperfectly), as demonstrated by Exhibit "A" to his declaration.  Why he did not seek the same consent with respect to his representing Defendant in this case is not explained by Mr. Hansen.

13.    Mr. Hansen admits that the client files regarding the Trojan Battery dispute remained with the Nims, Howes, Collison, Hansen & Lackert law firm, rather than being transferred to Lathrop & Gage in 2004, as was done with all of the other client files at issue. Hansen Declaration ¶ 7.  Apparently, Mr. Hansen did not want the Trojan Battery client files because it was a concluded matter, as opposed to a continuing matter like the other client files.

14.    My wife's name is Patricia Ann Crossley, M.D., not Pamela Fetter.  Hansen Declaration ¶ 8.  Whatever Mr. Morris had wished about Mr. Hansen representing me or any business entities with which I am associated, my wife and I personally engaged Mr. Hansen as our attorney on September 7, 1999.  Mr. Morris had no right or authority to engage Mr. Hansen on my behalf.  Hansen Declaration ¶ 8; Defendant's Brief p. 3.  Nor did Mr. Morris or Defendant have any interest in or right to participate in my receiving legal advice from Mr. Hansen regarding my residency or that of my wife.  Defendant's Brief p. 3.  Mr. Hansen's suggestion that they did is demeaning.

15.    When I engaged Mr. Hansen as my attorney, he said nothing to me that could possibly have caused me to think that I could or should not impart privileged and confidential information to him.  He never said, "John, I must warn you that anything you say to me today and anything that I say to you today may be disclosed by me to Bob Morris."  Nor did Mr. Hansen

disclose to me that he was representing Mr. Morris, and not me or my wife, during our two lengthy meetings on September 7, 1999. Hansen Declaration ¶¶ 9, 11; Schink Affidavit ¶¶ 5, 6. The suggestion by Mr. Hansen that he was representing only Mr. Morris with respect to either the immigration law issues as to which I sought his advice or as to the business and tax law issues as to which I also sought his advice is ludicrous. Even more mind-boggling is Mr. Hansen's assertion that I had told everything that I shared with him to Mr. Morris, a conclusion that is patently false. Hansen Deceleration ¶ 9; Defendant's Brief p. 3. The only possible basis for Mr. Hansen thinking that he could make such a statement is that he compared with Mr. Morris everything that I told him in confidence, thereby breaching his ethical duties to me. Mr. Hansen also seems to have forgotten that he was present throughout when we discussed immigration law issues during our morning meeting and business and tax law issues during our afternoon meeting, by teleconference with attorneys who Mr. Hansen had engaged who were located in Boston, Massachusetts and Philadelphia, Pennsylvania.

16.    Thus, Mr. Hansen does not materially dispute that, on September 7, 1999, he received from Fetter & Henderson (Pty) Ltd. and me privileged and confidential information and opined regarding, *inter alia*, the allegations in paragraphs numbered "41," "42," "43," "44," "48," "49," "50," "51," "54," "55," "56," and "58" of the Counterclaims. Mr. Hansen does not materially dispute having received, as the same time, privileged and confidential information of Applied Technology Limited that bears a substantial and identical relationship to the allegations in paragraphs numbered "41," "42," "43," "44," "48," "49," "50," "51," "54," "55," "56," and "58" of the Counterclaims. Hansen Declaration ¶ 11; Defendant's Brief pp. 3, 6, 13, 14.

17.    When Mr. Morris provided me with a copy of Mr. Hansen's billing statement dated December 21, 1999, I was outraged that Mr. Hansen had delivered a statement to Mr.

Morris that detailed part of the substance of my attorney-client communications with him. I have never waived my attorney-client privilege, and consider it a further breach of my attorney-client relationship with Mr. Hansen that he now has submitted a copy of that billing statement to this Court. Hansen Declaration ¶ 11; Exhibit "B;" Defendant's Brief p. 12. It is incomprehensible to me how Mr. Hansen now can characterize my payment for the legal services that he and the attorneys he engaged to counsel me on September 7, 1997 provided as being part of "the business dealings between Watermaster and Mr. Fetter's various companies." Hansen Declaration ¶ 11. Because Mr. Hansen admits that all of my business dealings with Mr. Morris were "at arm's length," no joint representation (or representation by proxy) could have occurred without a written consent to dual representation such as the one that Mr. Hansen sought from me on April 19, 1999, or less than five months earlier, with respect to the Trojan Batter matter. Hansen Declaration Exhibit "A." I did not pay Mr. Hansen $6,567.60 for having tea with him and the pleasure of his social company on September 7, 1999. I paid him for legal services rendered to me and to Fetter & Henderson (Pty) Ltd.

18.     In September or October of 2001, I again spoke to Mr. Hansen, this time with respect to patent number PCT/GB96/02406 that I own for a device that can be used to combat certain types of crimes. I provided Mr. Hansen with documents regarding that patent and the intended use of products embodying that patent, along with other privileged and confidential information that I did not impart to Mr. Morris, his client. Mr. Hansen advised me that he will be contacting high governmental officials in the United States who he knows to introduce them to my patented device.

19.     With respect to the Multifil trademark owned by Applied Technology Limited, it is inconceivable to me that Mr. Hansen did not understand who he was representing when he

prosecuted that application. Apparently, Mr. Morris provided him with the full corporate name, address, and contact person with whom he was to communicate regarding that application. Hansen Declaration Exhibit "C." Whatever expectations Mr. Morris may have disclosed in confidence to Mr. Hansen (which Mr. Hansen now has revealed), Applied Technology unmistakably was Mr. Hansen's client. Hansen Declaration ¶ 13. Thus, Mr. Morris could not have directed Mr. Hansen to file the Multifil trademark application. Defendant's Brief p. 2. Mr. Morris was not Applied Technology Limited's attorney-in-fact.

20.    Despite his having filed a "TEAS Change of Correspondence" with the United State Patent and Trademark Office ("USPTO") with respect to the Multifil trademark on December 30, 2004, Mr. Hansen claims that his representation of Applied Technology Limited with respect to that trademark ended on June 1, 2004. Hansen Declaration ¶ 18. Mr. Hansen does not explain how or why Lathrop & Gage's name was submitted to the USPTO with respect to that same trademark after he joined them on September 1, 2004. Hansen Declaration ¶ 15. Regardless, Mr. Hansen freely admits to having sought out and received written permission to move the client files of Applied Technology Limited to Lathrop & Gage on September 1, 2004. Hansen Declaration ¶ 15. Thus, in his adamantly denying any continued representation, Mr. Hansen ignores the affirmative actions that he took after he moved to Lathrop & Gage in order to continue his representation of Applied Technology Limited to the present.

21.    Neither I nor Fetter & Henderson (Pty) Ltd. has a relationship with Mr. Hansen as a result of the Multifil trademark. Schink Aff. ¶ 19. Applied Technology Limited has that relationship. As stated by Mr. Hamlin in his declaration in support of the instant motion, dated October 23, 2007 ("Hamlin Declaration"), Applied Technology Limited is relying upon Mr.

Hansen's continuing representation of them as their counsel of record in the USPTO. Hamlin Declaration ¶ 7.

22.     The condition for my agreeing to Mr. Hansen moving my client files and those of Fetter & Henderson (Pty) Ltd. and Applied Technology Limited to Lathrop & Gage was Mr. Hansen's representation that he would continue to represent us. Without that promise and assurance, there was no reason at all for my consenting to the transfer of those client files. Defendant's Brief p. 3. Had I known that Mr. Hansen thought that he was finished with representing us or that he was refusing to represent us in the future or that he would use information in those client files against us, as he has done in this case, I never would have agreed to the client file transfers or to representation by Lathrop & Gage.

23.     Additional documentary proof that Mr. Hansen and Lathrop & Gage presently represent Fetter & Henderson (Pty) Ltd. and me comes in the form of mail that Fetter & Henderson (Pty) Ltd. and I received from them on November 13, 2007. Annexed hereto as Exhibit "C" are photocopies of the envelope, post marked November 7, 2007, and the contents of that envelope that we received. All of the addressee information on the mailing label on that envelope is perfectly correct. There is absolutely no reason why we would be receiving mail from Mr. Hansen and Lathrop & Gage while we are in litigation with them unless we still are their clients pursuant to the September 1, 2004 agreement.

24.     Mr. Hansen conveniently omits from his list of client files that he moved to Lathrop & Gage all of my client files from his representation of me and my wife on September 7, 1999 and the communications I had with him during September or October of 2001. Hansen Declaration ¶ 15. Mr. Hansen and Lathrop & Gage ought to have possession of and access to those client files that were transferred pursuant to my written authorization. Hansen Declaration

Exhibit "D." Mr. Hansen and Lathrop & Gage cannot deny sending the two pages that comprise Exhibit "D" to the Hansen Declaration to me or receiving the second of those pages signed by me. Fro those reasons, I saw no need to annex those two pages to my prior declaration, dated October 22, 2007, in support of the instant motion. Mr. Hansen and Lathrop & Gage simply disagree with my interpretation of those documents. Defendant's Brief pp. 10, 12. I note that the first of those pages says "If you agree" following the sentence in which they state that they want to continue to represent Applied Technology Limited, Fetter & Henderson (Pty) Ltd., and me as they have done in the past. With the appropriate authority to do so, I noted the agreement of Applied Technology Limited, Fetter & Henderson (Pty) Ltd., and myself to such continued representation. And, consistent only with that agreement, on December 30, 2004 Mr. Hansen filed his "TEAS Change of Correspondence" with the USPTO with respect to the Multifil trademark. Despite that, Mr. Hansen and Lathrop & Gage charge that Applied Technology Limited has somehow been remiss in not discharging them. Defendant's Brief, pp. 8, 9. Obviously, there would be no reason to discharge or replace them unless they are representing Applied Technology Limited. Thus, I believe that my interpretation of those two pages is absolutely correct.

25.    I note that Mr. Hansen consistently lumps me, Fetter & Henderson (Pty) Ltd., and Applied Technology Limited together as though those corporations have no existence or property independent from me. This is especially annoying as my relationship to those two companies, their relationships with each other, and their relationships with Defendant were discussed in great detail during my two meetings with Mr. Hansen on September 7, 1999, all of which information ought to still be in the client files in the possession of Mr. Hansen and Lathrop & Gage. Hansen Declaration ¶¶ 2, 4, 5, 8, 11, 12, 15, 16; Defendant's Brief pp. 2, 3, 8, 11, 12. Ms. Schink uses

the same tactic. Schink Affidavit ¶¶ 4, 5, 9, 10, 11, 13, 19. The accurate facts are set forth in my prior declaration and in Mr. Hamlin's declaration in support of the instant motion. By confusing those relationships, Mr. Hansen, Lathrop & Gage, and Ms. Schink hope to obfuscate the issues.

26.    Mr. Schink says that Defendant's Counterclaims are based solely upon information contained in Mr. Morris' client files in the possession of Mr. Hansen. Schink Affidavit ¶ 13. However, since both Ms. Schink and Mr. Hansen take the view that Applied Technology Limited, Fetter & Henderson (Pty) Ltd., and I communicated with Mr. Hansen only in his role as Mr. Morris' attorney and only upon the direction of Mr. Morris, it would seem that our client files somehow became Mr. Morris' client files, to which Mr. Hansen and Lathrop & Gage have unfettered access.

27.    With respect to the Uniform Domain Name Resolution Proceeding that Applied Technology Limited instituted against Defendant, it is clear that Ms. Schink and Defendant are attempting to damage Applied Technology Limited's business, and thereby Fetter & Henderson (Pty) Ltd.'s business, by diverting Internet traffic away from its web site to Defendant's web site. Schink Affidavit ¶¶ 16-20. William J. Sapone, Esq. ("Mr. Sapone") is representing Applied Technology Limited in that proceeding – not Fetter & Henderson (Pty) Ltd. or me individually. Schink Affidavit Exhibit "C." That diversion by Defendant is being done in combination with illegal attempts by Ms. Schink and Defendant to prevent Fetter & Henderson (Pty) Ltd. from distributing its products in the United States, even though Ms. Schink and Defendant have asked me to find someone to replace them as a distributor of the products manufactured by Fetter & Henderson (Pty) Ltd. that are sold by Applied Technology Limited. Declaration of Thomas J. Fitzgerald, Esq., bearing no date, Exhibit "C."

28.    Contrary to what Defendant, Mr. Hansen, and Lathrop & Gage allege, Mr. Sapone never represented Defendant in any capacity, to my knowledge.  Schink Affidavit ¶¶ 17, 20; Fitzgerald Declaration ¶ 3, Exhibit "A;" Defendant's Brief p. 17.  What they are all referring to, and dishonestly so, is a patent for an invention of mine as to which I invited Mr. Morris to be listed as a co-inventor.  Mr. Morris did nothing, paid nothing, and never was represented by Mr. Sapone with respect to that patent.  Mr. Morris was nothing more than a silent, non-paying passenger riding on that patent.

29.    For all of the foregoing reasons, it is respectfully submitted that this Court ought to issue an Order disqualifying William R. Hansen, Esq. and Lathrop & Gage, L.C. as counsel of record for Defendant, Watermaster of America, Inc., in this case.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: Bryanston, South Africa
       November 17, 2007

                                            _____
                                            JOHN FETTER

12